<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YVETTE LYONS-GRAVES<br><br>*Plaintiff,*<br><br>v.<br><br>BANCORP BANK N.A., STRIDE BANK N.A., and CHIME FINANCIAL INC.<br><br>*Defendants.* | Civil Action No. 24-10522<br><br>**OPINION**<br><br>September 10, 2025 |

**SEMPER,** District Judge.

This matter comes before the Court on Bancorp Bank N.A., Stride Bank N.A., and Chime Financial Inc.'s (collectively "Defendants") motion to compel arbitration and stay the instant proceedings arising out of Plaintiff Yvette Lyons-Graves's Complaint. (ECF 15, "Def. Br.") Plaintiff filed a brief in opposition to Defendants' motion. (ECF 20, "Opp.") Defendants filed a reply in further support of their motion. (ECF 26, "Reply".) The Court reviewed the Complaint (ECF 1-1, Ex. A, "Compl.") and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion is **GRANTED.**

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Chime is a "financial technology company that partners with national banks, like [Defendants] Bancorp and Stride, to provide banking services to customers." (Compl. ¶ 23.) On June 22, 2021, Plaintiff used "Chime's online platform to open a Bancorp-issued Checking Account[.]" (ECF 16, "Def. Decl." ¶ 11.) On July 9, 2021, Plaintiff used "Chime's platform to

apply for and open a Visa Credit Card" with Stride. (*Id.* ¶ 12.) Plaintiff opened her accounts with Chime "for personal purposes" and "felt comfortable" with Chime because of "advertisements depict[ing] Chime as having a customer-first approach that prioritizes the needs and security of the customer." (Compl. ¶¶ 22, 25.)

Plaintiff asserts that "[o]n or about October 5, 2023, Defendants allowed unauthorized third parties to either gain access to Plaintiff's account and use approximately $2,521.50 of her funds or transfer funds from the Account." (*Id.* ¶ 28.) Plaintiff further asserts that she never approved these transactions. (*Id.* ¶ 29.) Plaintiff repeatedly disputed the transactions with Chime, but each time was told that Chime had determined no error occurred. (*Id.* ¶¶ 34-44.) Plaintiff never received a written explanation for Chime's determination, despite formally requesting the documents upon which Chime based its determination. (*Id.* ¶¶ 45-46.)

Plaintiff claims that, because of the "theft of the Account funds," she "has suffered from depression, stress, anxiety, and a sense of helplessness" and "has been forced to worry about her finances and how she will be able to afford her necessary medications, food, car payment, rent, and other essentials[.]" (*Id.* ¶¶ 47, 50.) For her injuries, Plaintiff seeks compensatory and punitive damages and brings numerous common law and statutory claims, including violations of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8) and the Electronic Fund Transfer Act (15 U.S.C. § 1693 *et seq.*). (*See id.*)

Plaintiff originally filed this action on October 7, 2024, in the Superior Court of New Jersey, Essex County, Law Division. (*Id.*) On November 15, 2024, Defendants removed the action to this Court. (*See* ECF 1.) Defendants filed the instant motion on January 10, 2025, seeking to compel arbitration of Plaintiff's claims and stay the present proceedings. (*See* Def. Br. at 1.)

2

## II. STANDARD OF REVIEW

"Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013). However, the Rule 12(b)(6) standard is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Id.* at 774 (internal quotations and citations omitted).

In that event, "a district court should employ the standard used in resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 771 (internal quotations and citations omitted); *see generally* Fed. R. Civ. P. 56. In *Guidotti*, the Third Circuit explained that

> if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776.

The Court must evaluate the present motion in accordance with Rule 56, because Defendants' arbitration defense is not clear from the face of the Complaint. Defendants move to compel arbitration on the ground that three separate user agreements ("the agreements"), from each of the respective defendants, each require arbitration for the resolution of disputes. (*See generally* Def. Br.) Plaintiff, however, does not rely on or reference these policies or any other

3

document related to arbitration in her Complaint. (*See* Compl.) Accordingly, the Court must go beyond the face of the pleading to evaluate arbitrability under the summary judgment standard of review. No party contends that discovery is necessary. Moreover, Plaintiff has not raised additional facts sufficient to place the agreement to arbitrate in issue such that additional discovery is necessary. As a result, the Court will decide Defendants' motion under the Rule 56 standard without providing the parties leave for limited discovery. *See, e.g.*, *Kamineni v. Tesla, Inc.*, No. 19-14288, 2020 WL 57867, at *2 (D.N.J. Jan. 6, 2020).

Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* When evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson,* 477 U.S. at 250; *see also* Fed. R. Civ. P. 56(c)(1)(A).

4

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51. This standard of review enables the district court to "ensure[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Guidotti*, 716 F.3d at 775 (internal quotation omitted).

### III.   ANALYSIS

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq.*). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

#### a.  Validity of the Arbitration Agreements

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The three user agreements at issue in this case are each governed by the substantive law of different states. While the parties' submissions do not

offer clarity on which state's substantive law should apply to the dispute, the distinction does not affect the Court's conclusion.

The user agreement for Chime's services contains a choice-of-law clause that states "the Agreement and the resolution of any Disputes shall be governed by and construed in accordance with the laws of the State of California[.]" (ECF 15-2, Ex. B at 19.)  Under California law, "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties . . . If contractual language is clear and explicit, it governs." *Valencia v. Smyth*, 110 Cal. Rptr. 3d 180, 198 (2010) (internal quotations omitted).  These "ordinary rules of contract interpretation apply to arbitration agreements." *Id.*

The Bancorp agreement is "governed by the laws of the State of South Dakota except to the extent governed by federal law." (ECF 15-4, Ex. D at 8.)  In South Dakota, courts employ "an overriding policy that arbitration will be favored, when provided for in a contract provision, as a means to the resolution of disputes." *Thunderstik Lodge, Inc. v. Reuer*, 585 N.W.2d 819, 822 (S.D. 1998).  Under the state's laws, "[a] written agreement to submit any existing controversy to arbitration…is *valid, enforceable and irrevocable,* save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (emphasis in original) (internal quotations omitted).  The arbitration provision within the Bancorp agreement, however, "shall be governed by the Federal Arbitration Act." (ECF 15-4, Ex. D at 50.)

The Stride Agreement is "subject to applicable federal laws and, to the extent not preempted by federal law, the laws of the State of Oklahoma[.]"  (ECF 15-6, Ex. F at 35.)  Its "arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the FAA."  (*Id.* at 42.)  Under Oklahoma law, "an agreement to submit any existing or subsequent controversy to arbitration is valid, enforceable and irrevocable except upon a ground

that exists in law or equity for the revocation of a contract." *Boler v. Sec. Health Care, LLC*, 336 P.2d 468, 476 (Okla. 2014).

Plaintiff brings claims under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, and the parties' submissions at times imply that New Jersey law applies. (*See generally* Compl.; Def. Br.) Accordingly, the Court will also consider how to determine the validity of the arbitration agreement under New Jersey law.[1] "An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014) (quoting *NAACP of Camden Cnty. E. v. Foulke Mgmt.*, 24 A.3d 777, 790 (N.J. Super. Ct. App. Div. 2011)). Mutual assent requires that the parties understand the terms to which they purportedly agree. "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" *Atalese*, 99 A.3d at 313 (quoting *Foulke*, 24 A.3d at 790-91).

At this stage of the litigation, the Court need not determine, and does not determine, which state's substantive law applies. Regardless of the answer, the conclusion is the same: there exist binding and valid arbitration agreements. Each of the three agreements mandates arbitration in clear and unequivocal language. The Chime agreement reads "You and Chime agree to resolve any Disputes through final and binding arbitration, except as set forth under Exceptions to Agreement to Arbitrate…" (ECF 15-2, Ex. B at 19.) The available exceptions are explained as:

> (g) Exceptions to Agreement to Arbitrate. Either you or Chime may assert claims, if they qualify, in small claims court in San Francisco, California, or any United States county where you live or work. Either party may bring a lawsuit solely for

---

[1] *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-244737, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

> injunctive relief to stop unauthorized use or abuse of the Services, or infringement of intellectual property rights (for example, trademark, trade secret, copyright or patent rights) without first engaging in arbitration or the informal dispute-resolution process described above.

(*Id.* at 20.) None of these exceptions apply in the instant dispute. Plaintiff sues in federal court in New Jersey, alleging mishandling and theft of account funds and seeking monetary relief. (*See generally* Compl.) The Bancorp Agreement reads:

> Any claim, dispute, or controversy ("Claim") arising out of or relating in any way to: i) this Agreement; ii) the Checking Account; iii) your acquisition of the Checking Account; iv) your use of the Checking Account; v) the amount of available funds in the Checking Account; vi) advertisements, promotions or oral or written statements related to the Checking Account, as well as goods or services purchased with the Checking Account; vii) the benefits and services related to the Checking Account; or viii) transactions made using the Checking Account, no matter how described, pleaded or styled, shall be FINALLY and EXCLUSIVELY resolved by binding individual arbitration conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. 1-16).

(ECF 15-4, Ex. D at 49-50.) The Stride Agreement similarly reads:

> Except as expressly provided herein, any claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third-party claims, arising from or relating to (i) the Card; (ii) any service relating to the Card; (iii) the marketing of the Card; (iv) this Agreement, including the validity, enforceability, interpretation, scope, or application of the Agreement and this arbitration provision (except for the prohibition on class or other non-individual claims, which shall be for a court to decide); and (v) any other agreement or instrument relating to the Card or any such service ("Claim") shall be decided, upon the election of you or the Bank (or the Bank's agents, employees, successors, representatives, affiliated companies, or assigns), by binding arbitration pursuant to this arbitration provision and the applicable rules and procedures of the arbitration administrator in effect at the time the Claim is filed.

(ECF 15-6, Ex. F at 40.)

Plaintiff does not deny agreeing to each of the user agreements but instead argues that Defendants "make legal conclusions that Plaintiff agreed to the terms and conditions without

8

stating what Plaintiff physically did to agree[.]" (Opp. at 8.) However, Defendants have established sufficient facts to demonstrate that Plaintiff did indeed agree to the user agreements. Plaintiff acknowledges that she had accounts with the Defendants' services. (*See* Compl. ¶¶ 22-24.) To open an account and use Defendants' services, Plaintiff was required to accept the user agreements. (Def. Decl. ¶ 7-8.) "If a user does not wish to accept either the User Agreement or the DAA, or abandons their application for any other miscellaneous reason, then the user's application remains incomplete and the user is unable to successfully create a Chime account. Chime also maintains records of those applications where registration was unsuccessful. Plaintiff completed registration and successfully created a Chime account." (*Id.* ¶ 8.)

Defendant Chime has maintained records indicating that Plaintiff electronically accepted the terms of the Chime and Bancorp Agreements on June 22, 2021, and the Stride Agreement on July 9, 2021. (*Id.* ¶¶ 11-12.) Plaintiff has failed to identify any specific facts or affirmative evidence to support her insinuations that she may not have agreed to the terms of the agreements. To demonstrate that there is a genuine issue of material fact regarding the enforceability of the agreement to arbitrate, Plaintiff "must present more than just 'bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.'" *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 325). Plaintiff has not met this burden. While the Chime Agreement does allow for claimants to opt-out of arbitration within thirty days of accepting the agreement (ECF 15-2, Ex. B at 19), Plaintiff did not do so. (Def. Decl. ¶ 17.)

Plaintiff further argues that the arbitration provisions of the agreements cannot be enforced because the agreements are "incompatible and would not put a reasonable consumer on notice of the agreements." (Opp. at 10.) Plaintiff cites *NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp.*,

9

24 A.3d 777 (N.J. Super. Ct. App. Div. 2011) for the proposition that "[c]ourts will not enforce multiple arbitration agreements when there are inconsistencies and confusing terms that would not put a reasonable consumer on notice of the agreements' meaning." (Opp. at 9.) However, Defendants correctly point out that *Foulke* is easily distinguishable from this case. There, the details of the arbitration provisions were "scattered" among various documents and were "too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning." *Id.* at 794. Here, in contrast, there are simply three separate agreements for different services, each with their own clear and unambiguous arbitration provision. The Court finds no basis to deem the provisions unenforceable. *See Sarbak v. Citigroup Glob. Markets, Inc.*, 354 F. Supp. 2d 531, 541 (D.N.J. 2004) ("Here, Plaintiff signed three distinct documents each containing arbitration provisions. Her actions constitute a concrete manifestation of her assent.").[2]

For these reasons, the Court finds that the agreements to arbitrate are valid.

### b. Agreements' Coverage of the Dispute

The Court must next address whether the claims at issue fall within the scope of the arbitration agreements. *See Century Indem. Co.*, 584 F.3d at 522. The Chime Agreement states that the arbitration shall cover "any dispute between you and Chime arising out of or relating to this Agreement or the Services." (ECF 15-2, Ex. B at 19.) The Bancorp Agreement mandates that arbitration for:

> Any claim, dispute, or controversy ("Claim") arising out of or relating in any way to: i) this Agreement; ii) the Checking Account; iii) your acquisition of the Checking Account; iv) your use of the Checking Account; v) the amount of available funds in the Checking Account; vi) advertisements, promotions or oral or written statements related to the Checking Account, as well as goods or services

---

[2] Plaintiff makes numerous additional arguments, relating to class action waivers and the supposedly illusory nature of the modification provisions of the agreements. (*See* Opp at 12-29.) Throughout, Plaintiff conflates the caselaw of various jurisdictions to support her arguments. The Court finds these additional arguments unpersuasive.

purchased with the Checking Account; vii) the benefits and services related to the Checking Account; or viii) transactions made using the Checking Account, no matter how described, pleaded or styled…

(ECF 15-4, Ex. D at 50.) The Stride Agreement reads:

[A]ny claim, dispute or controversy…arising from or relating to (i) the Card; (ii) any service relating to the Card; (iii) the marketing of the Card; (iv) this Agreement, including the validity, enforceability, interpretation, scope, or application of the Agreement and this arbitration provision (except for the prohibition on class or other non-individual claims, which shall be for a court to decide); and (v) any other agreement or instrument relating to the Card or any such service ("Claim") shall be decided, upon the election of you or the Bank (or the Bank's agents, employees, successors, representatives, affiliated companies, or assigns), by binding arbitration[.]

(ECF 15-6, Ex. F at 40.) The Complaint alleges that Defendants allowed a theft of Plaintiff's deposits to take place and "failed to comply with the EFTA where Plaintiff informed Defendants of multiple unauthorized transactions/errors, failed to maintain adequate measures to prevent such errors, failed to make good faith investigations into the errors, failed to provisionally recredit during the investigations, failed to provide their explanation of its findings[.]" (Compl. ¶ 2.) A dispute arising from such allegations falls squarely within the parties' valid agreements to arbitrate.

Accordingly, the Court finds that the arbitration agreements cover the dispute.

### IV.  CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration (ECF 15) is **GRANTED** and the current matter is **STAYED**. An appropriate Order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Cari Fais, U.S.M.J.
    Parties